## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

NORFOLK SOUTHERN RAILWAY
COMPANY,

                Plaintiff,                No. 2:25-cv-13668

vs.                                  JURY DEMANDED

PRIORITY YARD & TRAIN, LLC and
LIBERTY MUTUAL FIRE INSURANCE
COMPANY,

                Defendants.

---

## COMPLAINT FOR DECLARATORY
## JUDGMENT AND BREACH OF CONTRACT

Plaintiff, Norfolk Southern Railway Company ("NS"), by its attorneys, Sean M. Sullivan and Rachel E. Johnson of Mohan Groble Scolaro, P.C. and Michael J. Liddane and Adam A. Fadly of Foster Swift Collins & Smith PC, as and for its Complaint against Defendants Priority Yard & Train, LLC ("PYT") and Liberty Mutual Fire Insurance Company ("Liberty"), alleges as follows:

### BACKGROUND

#### *Summary of Claims*

1.     This is an insurance and indemnity action concerning a lawsuit filed against NS in the Circuit Court for the County of Macomb, Michigan (the

1

"Lawsuit"). The Lawsuit arises out of an incident on October 26, 2023, in which decedent, Thomas Glenn Durham ("Mr. Durham"), a PYT employee, was fatally injured by a vehicle which drove onto a railcar occupied by Mr. Durham. Mr. Durham worked for PYT at the FCA Sterling Heights Automotive Plant, located in Sterling Heights, Macomb County, Michigan, and was purportedly scanning bar codes on vehicles driven onto railcars at the time of the subject incident. The vehicle in question was allegedly operated by Derrick Drew Davis, Jr. ("Mr. Davis"), who was a PYT subcontractor at the time of the incident. In the Amended Complaint in the Lawsuit, Mr. Durham's estate seeks damages against NS arising from Mr. Davis's conduct, alleging that Mr. Davis was an NS employee at the time of the incident, and for negligent training of Mr. Davis, among other things. (A true and complete copy of the Amended Complaint in the Lawsuit is attached hereto as Exhibit "A").

2.      As described in this Complaint, PYT and its insurer, Liberty, have an obligation to defend and indemnify NS in the Lawsuit, pursuant to a written agreement between PYT and NS, and the terms of an automobile liability insurance policy issued by Liberty. Under the terms of the policy, NS is an additional insured. Liberty has wrongfully refused, thus far, to defend or indemnify NS. PYT's failure to defend and indemnify NS constitutes a breach of its agreement with NS.

3.      As detailed below, the PYT-NS agreement, as well as the Liberty policy with NS as an additional insured, are intended and understood to protect NS from claims such as those asserted in the Lawsuit. The purpose of this action is to determine the parties' rights and obligations concerning the defense of the Lawsuit, and to properly allocate to PYT and its insurer the obligation to defend and pay any judgments in the Lawsuit, as expressly provided for and intended by the applicable contracts and insurance policies. Moreover, NS seeks recovery from PYT for breach of its contractual agreements to defend and indemnify.

### Parties, Jurisdiction, and Venue

4.      This Court has subject matter jurisdiction of this action under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

5.      Plaintiff NS is a common carrier by rail and a foreign corporation organized under the laws of the Commonwealth of Virginia, with its principal place of business in Atlanta, Georgia. Pursuant to 28 U.S.C. § 1332(c)(1), NS is deemed to be a citizen of the Commonwealth of Virginia and the State of Georgia.

6.      Defendant PYT is a limited liability company organized under the laws of the Commonwealth of Kentucky, with its headquarters and principal place of business in Simpsonville, Kentucky. PYT's only publicly disclosed member is Michael Ford who is an individual and citizen of the Commonwealth of Kentucky.

3

Upon information and belief, no member of PYT is a citizen of the Commonwealth of Virginia or the State of Georgia. Pursuant to 28 U.S.C. § 1332(c)(1), PYT is deemed to be a citizen of the Commonwealth of Kentucky and is not a citizen of either the Commonwealth of Virginia or the State of Georgia.

6.     PYT is licensed and registered to do business in the State of Michigan, maintains an active registration with the State of Michigan Secretary of State, and derives substantial profits from business transactions in the State of Michigan.

7.     Defendant Liberty is an insurance company incorporated under the laws of the State of Wisconsin, with its principal place of business in the State of Massachusetts, and at all times material hereto was authorized to underwrite and issue policies of insurance in the State of Michigan. Pursuant to 28 U.S.C. § 1332(c)(1), Liberty is deemed to be a citizen of the State of Wisconsin and the State of Massachusetts.

9.     Jurisdiction is further appropriate because this is an action for declaratory judgment under 28 U.S.C. § 2201 and an actual case or controversy of a justiciable nature exits between the parties involving the rights and liabilities under a contract and an insurance policy.

10.     Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), as the Lawsuit underlying this Complaint, and the acts associated therewith, occurred within the Eastern District of Michigan, Southern Division.

57946:00004:202159471-1

## ALLEGATIONS COMMON TO ALL COUNTS

### *The PYT-NS Contract Overview*

11.     NS provides transportation and loading services for FCA USA, LLC ("FCA") at the FCA Sterling Heights Automotive Plant in Sterling Heights, Macomb County, Michigan (the "Facility").

12.     NS provides those transportation and loading services for FCA at the Facility pursuant to a written services agreement ("FCA Services Agreement"). (The FCA Services Agreement contains certain confidentiality terms between the parties. Upon entry of an agreed protective order NS will seek leave to file a copy of the FCA Services Agreement under seal (redacting only highly sensitive rate terms from the sealed copy) as Exhibit "B" to this Complaint.).

13.     PYT provides labor and supervision of NS's transportation services, including the loading of vehicles onto railcars at the Facility, pursuant to an Automobile Facility Agreement with NS dated April 1, 2019 (the "PYT Facility Agreement"). (The PYT Facility Agreement contains certain confidentiality terms between the parties. Upon entry of an agreed protective order NS will seek leave to file a copy of the PYT Facility Agreement under seal (redacting only highly sensitive rate terms from the sealed copy) as Exhibit "C" to this Complaint.).

14.     PYT became a party to the PYT Facility Agreement pursuant to an Assignment and Assumption Agreement dated December 1, 2022. (Upon entry of

5

an agreed protective order NS will seek leave to file a copy of the Assignment and Assumption Agreement under seal (redacting only highly sensitive rate terms from the sealed copy) as Exhibit "D" to this Complaint.).

15.     At and prior to the time of the accident alleged in the Lawsuit, the Agreements between NS and PYT were in full effect.

16.     The accident alleged in the Lawsuit occurred at the referenced Facility during the operations undertaken pursuant to the PYT Facility Agreement.

### *Circumstances of the Incident in the Lawsuit*

17.     At the time of the incident in the Lawsuit, PYT was performing services at the Facility pursuant to the Facility Agreement, and the decedent, Mr. Durham, a PYT employee, was located inside of a railcar.

18.     At that time, Mr. Davis, a PYT subcontractor, drove a 2024 Dodge Ram 1500 into the railcar where Mr. Durham was located, striking Mr. Durham and pinning him between the Dodge Ram and another vehicle.

19.     Mr. Durham ultimately succumbed to his injuries and died, and his estate initiated the Lawsuit.

### *FCA Tender to NS*

20.     Pursuant to the terms of the FCA Services Agreement, NS and FCA are required to indemnify and defend each other for all claims, liability, and losses arising from injury or death of any person, to the extent such claims, liabilities, and

57946:00004:202159471-1

losses "result from or arise out of any act or omission of the indemnifying party, or its employees, or subcontractors, in connection with the performance of transportation services." *See* Ex. B at 2, § 3.

21.     FCA tendered its defense of the underlying Lawsuit to NS and demanded indemnity pursuant to the FCA Services Agreement by a letter dated December 4, 2024. (A copy of the 12.4.24 letter is attached hereto as Exhibit "E").

### *PYT's Obligation to Defend and Indemnify NS*

22.     At the time of the incident, PYT was performing services at the Facility pursuant to the PYT Facility Agreement. Section 5.A of that agreement, as amended in Change Order 4 dated April 21, 2022, provides in relevant part:

> Contactor [PYT] shall indemnify, defend, and hold harmless the Indemnified Parties [NS and affiliates] from and against any and all liability, damages, claims, suits, judgments, costs and expenses (including litigation costs, investigation costs, reasonable attorney fees, …), fines, penalties and losses arising from or in connection with:
>
> (i)(A) any … loss of life of or personal injury to any Contractor Party arising from, incident to or occurring in connection with the performance by Contractor of this Agreement or the presence of any Contractor Party on the property of Railway, unless such loss of life, personal injury … was caused solely by the negligence or intentional misconduct of Railway; provided, however, that if, under the law applicable to enforcement of this Agreement, this agreement to indemnify against the indemnified party's own negligence is invalid, then in that event Contractor's obligation to indemnify the

7

Indemnified Parties under this Section shall be reduced in proportion to the negligence of Railway, if any, that proximately contributed to such loss of life, personal injury …

(B) except with respect to persons and property covered by subsection (i)(A) above, any actual or alleged loss of life of or personal injury to any person … arising from, incident to or in connection with the negligent acts or omissions or willful misconduct of any Contractor Party, except to the extent that the … personal injury or death was caused solely by the negligence or intentional misconduct of Railway.

23.    Section 2.A of the PYT Facility Agreement provides that PYT shall be solely responsible for the employing or supervising of each person engaged in discharging PYT's responsibilities under the agreement, and that, if PYT engages the services of any subcontractor or agent to carry out any of PYT's obligations under the agreement, PYT "assumes full responsibility and shall indemnify and hold harmless [NS] from any consequences of the acts and omissions of such subcontractor or agent." *See* Ex. C.

24.    PYT is required to indemnify NS under the PYT Facility Agreement because the injury to Mr. Durham is alleged to have occurred in connection with PYT's performance of the PYT Facility Agreement, Mr. Durham was a "Contractor Party" under the terms of the agreement and the injury was ***not*** caused solely by negligence or intentional misconduct of NS. Additionally, Mr. Davis was a

8

subcontractor of PYT and PYT is obligated to indemnify NS for the acts and omissions of any subcontractor.

### *Insurance Requirements*

25.   Section 6 of the PYT Facility Agreement provides in relevant part:

> Contractor shall at its sole cost and expense, obtain and maintain during the period of this Agreement, in a form and with companies satisfactory to Railway, the following insurance coverages:

> C. Commercial General Liability insurance with a combined single limit of not less than $5,000,000 per occurrence for injury to or death of persons and damage to or loss or destruction of property. Such policy shall be endorsed to provide products and completed operations coverage and contractual liability coverage for liability assumed under this Contract. The contractual liability coverage shall be of a form that does not deny coverage for operations conducted within 50 feet of any railroad hazard. The policy shall not deny coverage for any obligation of the insured under the Federal Employers Liability Act, as amended. In addition, said policy or policies shall be endorsed to name [NS and its affiliates] as an additional insured and shall include a severability of interests provision;

> D. Automobile Liability Insurance with a combined single limit of not less than $5,000,000 each occurrence for injury to or death of persons and damage to or loss or destruction of property. Such policy or policies shall be endorsed to name [NS and its affiliates] as an additional insured and shall include a severability of interests provision;

9

26.     Section 6 further provides that PYT shall require all subcontractors who are not covered by the insurance carried by PYT to separately maintain the above insurance coverage, and that the insurance coverage required shall not limit PYT's liability under the PYT Facility Agreement. *See* Ex. C.

### *Liberty Auto Policy*

27.     Liberty issued the following policy ("Liberty Auto Policy") to PYT (among others as yet unknown to NS):

> Liberty Mutual Insurance Company
> Commercial Automobile Liability Policy No. AS2-651-290700-023
> Policy Effective Dates: 3/15/23 to 3/15/24
> Limits Each Occurrence: $2,000,000

(A copy of the Auto Policy is attached hereto as Exhibit "F").

28.     Paragraph A.1 of Section II of the above policy (Who is an Insured) as modified by Endorsement CA 20 48 10 13 (Designated Insured for Covered Autos Liability Coverage) provides that any person or organization PYT has agreed in writing to add as an additional insured is deemed an insured under the policy. NS is an additional insured under the Liberty Auto Policy by virtue of the requirement in Section 6 of the PYT Facility Agreement that NS and its affiliates be named as additional insureds under PYT's liability insurance policies. *See* Exs. C; F.

10

29.     Moreover, pursuant to paragraph B.2.a of Section II and paragraph H.5 of Section V of the Liberty Auto Policy, PYT's agreement to indemnify NS as set forth in Section 5.A of the PYT Facility Agreement is an "insured contract" and PYT's indemnity liability is therefore a covered loss under the policy. *See* Ex. F.

30.     Further, paragraph G of Section V of the Liberty Auto Policy defines "insured" as "any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage and further provides that "[e]xcept with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or 'suit' is brought." NS is an "insured" under the terms of the policy and is therefore afforded the same coverage as the named insured, including coverage for "insured contracts." Any contractual obligation for NS to indemnify FCA under the FCA Services Agreement is an insured contract and NS's indemnity liability is a covered loss under the policy. *See* Exs. B; F.

### *NS's Tender and Demand for Defense and Indemnity to PYT*

31.     By letter dated October 27, 2023, NS provided written notice to PYT of the incident in the underlying Lawsuit and made a demand for indemnity. (A copy of the 10.27.23 Notice of Incident/Indemnity Demand is attached hereto as Exhibit "G").

11

32.     By letter dated December 16, 2024, NS provided written notice of the Lawsuit, tendered the defense to PYT and demanded contractual indemnity from PYT. (A copy of the 12.16.24 Defense and Indemnity Letter to PYT is attached hereto as Exhibit "H").

33.     PYT responded to the tender and demand for indemnity in a November 1, 2023 email to NS, stating "[i]n regards to the attached, we will indemnify per contract." (A copy of the 11.1.23 Email is attached hereto as Exhibit "I").

34.     Despite acknowledging its duties under the Agreements, to date, PYT has not fulfilled its obligation to defend and indemnify NS.

### *NS's Tender to Liberty*

35.     By letter dated April 28, 2025, NS provided written notice to Liberty of the Lawsuit, tendered the defense of the Lawsuit and demanded coverage/indemnity pursuant to the terms of the PYT Facility Agreement and the Liberty Auto Policy. (A copy of the 4.28.25 Tender Letter to Liberty is attached hereto as Exhibit "J").

36.     To date, Liberty has not fulfilled its obligations to defend or indemnify NS.

### *Additional Required Insurance Policies*

37.     Section 6 of the PYT Facility Agreement requires PYT to maintain certain insurance policies including a Workers Compensation Policy, and Employer's Liability Policy, a Commercial General Liability Policy, and an

12

Automobile Liability Policy. Section 6 further requires PYT to provide to NS certificates of insurance certifying the existence of those policies, and requires PYT, upon demand from NS, to provide NS with copies of the insurance policies.

38.   By letter dated April 25, 2025, NS demanded that PYT provide the required certificates of insurance and copies of all required insurance policies. To date, in breach of its obligations under the PYT Facility Agreement, PYT has refused to provide either the certificates of insurance or copies of the insurance policies. (A copy of the 4.25.25 Letter is attached hereto as Exhibit "K"). On July 31, 2025, PYT provided copies of liability insurance policies with material terms and information redacted. PYT has not provided the required certificate of insurance.

**COUNT I**
**BREACH OF CONTRACT AGAINST PYT (DUTY TO DEFEND)**

39.   NS repeats and incorporates paragraphs 1-38 as and for paragraph 39.

40.   By virtue of the foregoing facts, PYT has materially breached the PYT Facility Agreement.

41.   PYT has a contractual duty under the Facility Agreement to defend NS with respect to the Lawsuit including all costs NS may incur in defending or indemnifying FCA.

13

42.     PYT has failed to defend, indemnify, and hold harmless NS in the Lawsuit, in breach of Section 2.A and Section 5.A of the Facility Agreement, as amended in Change Order 4 dated April 21, 2022. *See* Ex. C.

43.     The Facility Agreement and the Assignment and Assumption Agreement are valid and enforceable contracts. *See* Exs. C; D.

44.     NS has performed all acts required of it under both the Facility Agreement and the Assignment and Assumption Agreement.

45.     PYT's breach of its contractual duty to defend NS in the Lawsuit has caused and will continue to cause NS to incur costs, fees, liability, or payments defending against the Lawsuit and additionally expose NS to the possibility of a monetary judgment.

46.     Based upon the Facility Agreement and the defense and indemnity provisions contained therein, NS is entitled to damages from PYT in the amount of all attorneys' fees, costs and other expenses it has incurred or will incur in the defense of the Lawsuit.

WHEREFORE, NS prays for the entry of a judgment against PYT for breach of contract, in an amount to be proven at trial, for all attorneys' fees, costs and other expenses it has incurred or will incur in the defense of the Lawsuit, and for such other relief as the Court deems appropriate.

14

## COUNT II
## BREACH OF CONTRACT AGAINST PYT (DUTY TO INDEMNIFY)

47.     NS repeats and incorporates paragraphs 1-46 as and for paragraph 47.

48.     By virtue of the foregoing facts, PYT has materially breached the PYT Facility Agreement.

49.     PYT has a contractual duty under the Facility Agreement to indemnify NS with respect to the Lawsuit including all costs or liability NS may incur with respect to FCA.

50.     Despite acknowledging its duty to indemnify, PYT has failed to defend, indemnify, and hold harmless NS in the Lawsuit, in breach of Section 2.A and Section 5.A of the Facility Agreement, as amended in Change Order 4 dated April 21, 2022. *See* Ex. C.

51.     The Facility Agreement and the Assignment and Assumption Agreement are valid and enforceable contracts. *See* Exs. C; D.

52.     NS has performed all acts required of it under both the Facility Agreement and the Assignment and Assumption Agreement.

53.     PYT's breach of its contractual duty to indemnify NS in the Lawsuit has caused and will continue to cause NS to incur costs, fees, liability, or payments defending against the Lawsuit and additionally exposes NS to the possibility of a monetary judgment or settlement in the Lawsuit.

57946:00004:202159471-1

54.     Based upon the Facility Agreement and the defense and indemnity provisions contained therein, if NS is held liable to Mr. Durham's estate or pays a settlement in the Lawsuit, then, in addition to the fees and costs prayed for in Count I, NS is entitled to damages from PYT in the amount of any judgment rendered against it or any settlement it may pay in the Lawsuit.

WHEREFORE, NS prays for the entry of a judgment against PYT for breach of contract, in an amount to be proven at trial, but in no amount less than the amount of any judgment entered against it or settlement paid by NS in the Lawsuit, and for such other relief as the Court deems appropriate.

## COUNT III
## DECLARATORY JUDGMENT

55.     NS repeats and incorporates paragraphs 1-54 as and for paragraph 55.

56.     On the basis of the facts set forth herein, NS is an additional insured under the terms of the Liberty Auto Policy.

57.     There are no terms under the Auto Policy that preclude coverage for NS or relieve Liberty from its coverage obligations.

58.     As an additional insured, NS is entitled to defense and indemnity under the Liberty Auto Policy for all fees, costs, liability, judgments, settlements, and payments incurred in or arising out of the Lawsuit which include all costs and liability NS may incur with respect to FCA.

16

59.    NS made a timely demand for defense and indemnity as an additional insured.

60.    NS has performed all acts required of an additional insured under the Liberty Auto Policy including, but not limited to, providing reasonable and timely notice of the existence of an insured claim.

61.    Notwithstanding the foregoing, and in breach of its obligations under the applicable policy, Liberty has, to date, failed and refused to accept NS's tender of defense and demand for indemnity and has failed and refused to defend NS in the Lawsuit.

62.    Alternatively, and on the basis of facts set forth herein, if there are any terms under the Liberty Auto Policy which might have precluded or limited coverage or relieved Liberty from its coverage obligations, Liberty is estopped from asserting or relying on these terms because it failed to either defend NS in the Lawsuit under a reservation of rights or seek a judicial determination of its coverage obligations under the Liberty Auto Policy.

63.    Alternatively, and on the basis of the facts set forth herein, Liberty has waived the right to contest or disclaim coverage for NS under the Liberty Auto Policy.

57946:00004:202159471-1

64.     NS has been damaged by the foregoing failure to accept its tender of defense and demand for indemnity, in and to the extent that they have incurred or will incur costs, fees, liability, or payments arising out of the Lawsuit.

65.     By reason of the foregoing, an actual controversy exists as to the obligation of Liberty to defend and indemnify NS in the Lawsuit, and as to the parties' respective rights and obligations under the PYT Facility Agreement and the Liberty Auto Policy. The controversy is ongoing because the Lawsuit is ongoing and both PYT and Liberty are continuing to breach their respective obligations.

66.     Pursuant to 28 U.S.C. § 2201, this Court has jurisdiction to declare the rights and obligations of the parties hereto, and to enter such other relief as it deems appropriate.

WHEREFORE, NS prays for the entry of a judgment finding and declaring:

    i.    the Liberty Auto Policy affords coverage for NS in the Lawsuit;

    ii.    Liberty and PYT are obligated to defend NS against all claims in the Lawsuit;

    iii.    Liberty and PYT are obligated to pay any judgment entered against NS in the Lawsuit, and/or reimburse NS for any and all such judgments or settlements paid by NS (in the case of PYT without limit and in the case of Liberty up to the limits of its

policies) including all costs and liability NS may incur with respect to FCA; and

    iv.   Liberty and PYT are obligated to reimburse NS for all attorneys' fees and costs of defense incurred in defending the Lawsuit including all costs NS may incur with respect to FCA.

NS further prays for an award of all costs incurred by NS in bringing this action, and for such other and additional relief as the Court deems appropriate.

**NORFOLK SOUTHERN
RAILWAY COMPANY**

Sean M. Sullivan (*PHV Applied*)
Rachel E. Johnson
Mohan Groble Scolaro, P.C.
55 W. Monroe St., Suite 1600
Chicago, IL 60603
312-422-9999
ssullivan@mohangroble.com
rjohnson@mohangroble.com

FOSTER SWIFT COLLINS & SMITH PC

By:   /s/Michael J. Liddane
       Michael J. Liddane (P38639)
       Adam A. Fadly(P73218)
       Local Counsel for Plaintiff
       28411 Northwestern Highway, Suite 500
       Southfield, MI 48034
       248-538-3614
       mliddane@fosterswift.com
       afadly@fosterswift.com

Dated:  November 18, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2025, I caused the foregoing Norfolk Southern Railway Company's Complaint for Declaratory Judgment and Breach of Contract to be served on all counsel of record using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/Deborah Kales*
Deborah Kales
Legal Assistant

57946:00004:202159471-1